Leroy S. Lapp, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued January 31, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*James P. Coho,* for petitioner.

*R. Scott Shearer,* Deputy Attorney General, for Commonwealth.

OPINION BY PRESIDENT JUDGE BOWMAN, June 16, 1978:

By petition for review in the nature of a tax appeal, petitioner, Leroy S. Lapp, seeks a refund of a portion of $5,424.97 paid to the Commonwealth in compromise of a tax assessment made against him and for which the taxing authorities had caused a lien to be filed. The Board of Finance and Revenue refused his petition for refund, hence this de novo tax appeal. The facts have been stipulated.

Petitioner, who operates a sole proprietorship engaged in painting and sandblasting, is an employer within the meaning of Section 301(h) of the Tax Reform Code of 1971 (Code),[1] 72 P.S. §7301(h). Petitioner is required pursuant to Section 319(3) of the Code, 72 P.S. §7319(3), to pay over to the Commonwealth on a semi-monthly basis the personal income taxes withheld from his employees' paychecks. This he did through June 30, 1972. However, subsequent to that date, and throughout 1973, petitioner withheld but did not pay over these taxes.

During December, 1973 and January, 1974, petitioner was audited by the Pennsylvania Personal Income Tax Bureau (Bureau). On January 17, 1974, prior to any formal assessment being issued, petitioner tendered two checks to the Bureau auditor in the amounts of $4,849.60 and $10,289.35 to cover, respectively, the balance of the 1972 and the entire amount of the 1973 income tax he had withheld from his employees.

---

[1] Act of March 4, 1971, P.L. 6, *as amended,* added by Section 4 of the Act of August 31, 1971, P.L. 362, *as amended.*

On or about February 5, 1974, the Bureau issued a formal assessment against petitioner with respect to 1973 as follows:

| | |
|---|---|
| Tax Due | $10,289.35 |
| Tax Timely Remitted | —0— |
| Balance Due | 10,289.35 |
| Interest Due—2/28/74 | 334.40 |
| Penalty[2] | 10,289.35 |
| Total Assessment | 20,913.10 |
| Less Payment Remitted | 10,289.35 |
| Total Balance Due | $10,623.75 |

(Footnote added.)

Petitioner neither filed a petition for reassessment with respect to this amount, as he might have pursuant to Section 340 of the Code, 72 P.S. §7340, nor did he pay this assessment.

Consequently, on or about August 29, 1974, the Bureau caused to be filed against petitioner a lien for the above assessment in the Court of Common Pleas of Chester County, petitioner's county of residence. Some six months later, in February, 1975, petitioner conferred with counsel concerning the entry of this lien. Petitioner's counsel sent a letter, dated February 26, 1975, to the Legal Department of the Bureau which closed with the following language: "I gather that this matter should be resolved by reassessment. I would appreciate your help and suggestions in this matter." After waiting for over three months with-

---

[2] Section 352(e) of the Code, 72 P.S. §7352(e), provides for the imposition of a penalty equal to the amount of the tax due for a wilfull failure truthfully to account for and pay over such tax.

out a reply, petitioner's counsel sent another letter to the Bureau's Legal Division, dated June 3, 1975. On June 11, 1975, petitioner received from the Chief of the Bureau's Judicial Claims Section a letter which, after explaining the reasons for the imposition of this assessment, stated: "Having failed to follow your reassessment procedural remedy within the prescribed time, your only recourse is to pay the amount specified to satisfy your liens and then appeal to the Board of Finance and Revenue for a reduction of penalty and a refund." On June 20, 1975, petitioner received from the Office of the Attorney General, Eastern Regional Office, a letter in which he was advised by an assistant attorney general: "If for any reason you cannot make full and immediate payment, you are to notify us IMMEDIATELY so that suitable alternative arrangements can be made." (Emphasis in original.)

An alternative arrangement to full and immediate payment was, in fact, the path pursued. In accordance with Sections 512 and 903 of The Administrative Code of 1929,[3] 71 P.S. §§192, 293, and Section 1405 of The Fiscal Code,[4] 72 P.S. §1405, the $10,623.75 assessment was referred to the Department of Justice Collections Bureau. After protracted telephone conversations and further correspondence, an assistant attorney general and petitioner's counsel compromised the claim, pursuant to the provisions at 37 Pa. Code §131.1 et seq., for $5,424.97, a figure representing a 40% penalty plus interest. The balance of the assessment, $5,551.27 was written off. By letter dated January 22, 1976, petitioner's check in the amount of $5,-424.97 was sent by petitioner's counsel to the assistant attorney general. In this letter also, petitioner's

---

[3] Act of April 9, 1929, P.L. 177, as amended.

[4] Act of April 9, 1929, P.L. 343, as amended.

counsel stated that petitioner "may want to file for a refund." An order to satisfy the Chester County lien was received by petitioner's counsel on May 24, 1976.

Petitioner's accountants filed a petition for refund with the Board of Finance and Revenue seeking a cash refund of $4,910.50. This figure is the difference between the $5,424.97 paid by petitioner after compromise, less $514.47, an amount arrived at by calculating a 5% penalty on the original $10,289.35 penalty assessment. Section 352(b) of the Code, 72 P.S. §7352 (b), provides for the imposition of a 5% penalty for negligent underpayment. Petitioner's refund petition was based upon the argument that the Bureau improperly computed his original penalty at 100% for wilful conduct rather than at 5% for negligent conduct. The Board of Finance and Revenue refused to grant this refund petition and the matter is now before us.

The question presented is whether petitioner, who initially did not pursue either of the statutory procedures available to him to challenge the propriety of the original assessment, and who chose instead to compromise the assessment, is estopped from subsequently petitioning for a refund of the compromised amount on the basis that the penalty originally assessed was improperly calculated. Put another way, may petitioner now collaterally attack the compromised claim utilizing the same procedure and the same argument which he might have but did not use to challenge the assessment prior to compromise? We hold that petitioner is estopped from petitioning for a refund of the compromised amount.

The Code provides two procedures by which petitioner could have challenged the propriety of the imposition of the 100% penalty assessment of the Bureau. By following the provisions of Section 340 of

the Code, 72 P.S. §7340, petitioner could have filed with the Department of Revenue a petition for reassessment within 90 days of the mailing date of the assessment. From an adverse decision, petitioner could have sought review in this Court. He did not pursue this reassessment route. By following the provisions of Section 350 of the Code, 72 P.S. §7350, petitioner could have paid the $10,623.75 assessment and then filed a petition for refund with the Board of Finance and Revenue. An adverse decision could have brought him before this Court. He did not pursue this refund route. Instead, for reasons not disclosed by the stipulation of facts, petitioner slept on his statutory rights. After properly entering a lien against petitioner for the full amount of the assessment, the Commonwealth demonstrated a willingness to compromise its claim for less than the full amount.

An examination of the Code reveals that it contains no provisions relative to a compromise settlement procedure for outstanding personal income tax claims. However, other statutes and regulations do establish a compromise settlement procedure applicable to Commonwealth claims generally. Section 1405 of The Fiscal Code, 72 P.S. §1405, provides, in part: "Whenever any taxes . . . [and] penalties . . . are not paid within ninety (90) days . . . [f]rom the date of settlement [assessment], if no petition for resettlement [reassessment] has been filed . . . , the Department of Revenue shall call upon the Department of Justice to collect the same." Section 512 of The Administrative Code of 1929, 71 P.S. §192, provides, in part: "[W]henever any taxes or other accounts of any kind whatever due the Commonwealth remain overdue and unpaid for a period of ninety days, it shall be the duty of . . . [any] department, board, commission, or officer [of the State Government], to refer the same to the Department of Justice." Section 903 of

The Administrative Code of 1929, 71 P.S. §293, provides, in part: "The Department of Justice shall have the power, and its duty shall be . . . [t]o collect, by suit or otherwise, all debts, taxes, and accounts due the Commonwealth, which shall be placed with the department for collection by any department, board, or commission."

The provisions of Chapter 131 of Title 37 of the Pennsylvania Code, 37 Pa. Code §131.1 et seq., entitled "Compromise and Writeoff of Claims," were specifically issued under the above-quoted sections of The Fiscal Code and The Administrative Code of 1929. The term "compromise" is defined, at 37 Pa. Code §131.1, as "[t]he process of settlement *by mutual consent,* either in court or out of court, which appears to the parties to be *equitable under all of the circumstances, including uncertainty as to law or fact.*" (Emphasis added.) While the documentation in this case pertaining to the reasons why the compromise figure of a 40% penalty was selected is not as detailed as might be desired, neither party has asserted that a "compromise" was not, in fact, reached by the mutual consent of the parties as to this claim. By agreeing to the compromised amount, petitioner evidenced his belief that this figure was "equitable under all of the circumstances, including uncertainty as to law or fact." Petitioner should not, after this compromise, now be permitted to litigate the application of the law to the original penalty assessment.

Supportive of our holding here is *Borg-Warner Corp. v. Board of Finance and Revenue,* 424 Pa. 343, 227 A.2d 153 (1967). In *Borg-Warner* the Supreme Court held that where a taxpayer enters into a stipulation for judgment in settlement of a Commonwealth tax claim against him, the stipulation for judgment constitutes res judicata and the taxpayer has no right to petition for a refund with the Board of Finance

and Revenue, even though a subsequent court decision declared an identical assessment to be erroneous. The Court reasoned that the tax paid to the Commonwealth was not paid under an interpretation of a taxing statute subsequently held to be erroneous, but rather was a tax "paid as the result of stipulations entered into between the taxpayers and the Commonwealth, in settlement and compromise of litigation then in progress between the taxpayers and the Commonwealth." *Borg-Warner, supra* at 348-49, 227 A.2d at 156. Similarly in the case at bar, petitioner's payment of the $5,-424.97 compromise was not a tax assessment paid under the 100% penalty provision, but rather was an assessment paid as the result of a valid compromise voluntarily entered into by petitioner and the Commonwealth.

Sound public policy is served by our decision in this case as well. A tacit assumption underlies petitioner's present assertion that he still possesses a right to a refund under Section 350 of the Code despite the fact that he agreed to compromise this claim. An assumption that one should not be bound by his agreement to compromise or by his payment of a compromised claim would vitiate the ability of the Department of Justice to effectively negotiate compromises of unpaid tax claims. This we refuse to do. We hold that petitioner is estopped from filing for a refund of the compromised amount and need not, therefore, address petitioner's contention that his conduct was negligent rather than wilfull.

We affirm the Board of Finance and Revenue.

### ORDER

Now, June 16, 1978, the order of the Board of Finance and Revenue is hereby affirmed and the petition for review is dismissed.